**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **ESSAM SAAD** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **BAKKT HOLDINGS, INC.,** | ) |
| **BAKKT CRYPTO SOLUTIONS, LLC,** | ) |
| **BAKKT MARKETPLACE, LLC, and** | ) |
| **WEBULL PAY, LLC,** | ) |
| | ) |
| **Defendants.** | ) |

**PLAINTIFF'S FIRST AMENDED COMPLAINT AT LAW**

## I. INTRODUCTION

Plaintiff files this First Amended Complaint pursuant to Fed. R. Civ. P. 15(a), to clarify jurisdictional allegations regarding the parties' agreement to Illinois venue and jurisdiction following Defendants' refusal to participate in arbitration.

Plaintiff Essam Saad ("Plaintiff") brings this action to redress the wrongful liquidation of his digital assets by Defendants Bakkt Holdings, Inc., Bakkt Crypto Solutions, LLC, Bakkt Marketplace, LLC, and Webull Pay, LLC (collectively, "Defendants"). Plaintiff is an individual investor who, in reliance upon Defendants' contractual promises and custodial representations, purchased substantial quantities of Cardano (ADA) and Solana (SOL) through Webull's trading platform, which was serviced at the time by Apex Crypto, LLC—later acquired and rebranded as Bakkt Crypto Solutions, LLC (Ex. 7, Bakkt Form 8-K).

Defendants expressly represented in their User Agreement that cryptocurrency purchased and custodied through their platforms would be held for the benefit of customers, safeguarded against unauthorized transfer, and accessible solely at the direction of the account holder (Ex. 1, Bakkt User Agreement). Contrary to these contractual assurances, and without authorization from Plaintiff, Defendants unilaterally liquidated Plaintiff's holdings of 265,415.93 ADA and 121.13 SOL on or about September 21, 2023 (Ex. C, Notice of Closing File; Ex. 7, Bakkt Form 8-K; Ex. 6, Forced Liquidation Receipts/Screenshots; Ex. 11, September 2023 Form 10-Q Amendment). The forced liquidation generated more than $75,000 in proceeds at below-market value and deprived Plaintiff not only of his assets but also of the opportunity to benefit from their subsequent market appreciation.

Plaintiff promptly sought redress through the arbitral forum mandated by Defendants' own agreement, filing a Demand for Arbitration with JAMS (Ex. A, Demand for Arbitration) and effecting service on each of the named entities (Ex. B, Proofs of Service). Despite receiving notice, Defendants elected not to appear or participate. On October 28, 2024, JAMS formally closed the file due to lack of participation by the Respondents (Ex. C, JAMS Notice of File Closure).

With the arbitral forum extinguished through no fault of his own, Plaintiff now turns to this Court, as contemplated by the same forum-selection provisions invoked by Defendants (Ex. 1, Bakkt User Agreement § 17, Governing Law and Venue). This action seeks compensatory and punitive damages for Defendants' breach of contract, breach of fiduciary duty, conversion, and unjust enrichment.

Moreover, Defendants' own public filings with the U.S. Securities and Exchange Commission confirm that, during the relevant period, Bakkt faced severe liquidity constraints

and "substantial doubt" was raised as to its ability to continue as a going concern, citing cumulative losses of $147.1 million and over $53.9 million in cash consumed by operations through September 30, 2023 (Ex. 10, Sept. 2023 10-Q, at 14–15) . In its amended report, Bakkt conceded that it did "not believe that [its] cash and restricted cash are sufficient to fund [its] operations for the 12 months following" the filing date, acknowledging "substantial doubt" regarding its continued viability absent new financing (Ex. 11, Sept. 2023 10-Q/A, at 20). The same filing further discusses delistings of crypto assets in September 2023, including ADA and SOL, and the revenue impacts of such delistings on Bakkt's financial results (Ex. 11, 10-Q/A, at 27). On information and belief, Defendants recognized significant transactional revenue from Plaintiff's forcibly liquidated assets as part of these delisting events. These admissions underscore that Defendants' conduct was not administrative housekeeping, but part of a calculated scheme to bolster their reported revenue and liquidity at the direct expense of their customers.

Through this action, Plaintiff respectfully seeks to hold Defendants accountable for the unauthorized seizure and monetization of his assets, the breach of their contractual and fiduciary obligations, and the unjust enrichment obtained thereby.

## II. JURISDICTION AND VENUE

1. **Subject Matter Jurisdiction.**
    1. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a).
        1. Plaintiff is domiciled in Florida.
        2. Defendant Bakkt Holdings, Inc. is a Delaware corporation with its principal office in Alpharetta, Georgia;

3. Defendant Bakkt Crypto Solutions, LLC is a Delaware limited liability company (*see* Ex. D for Domicile and Residency, it should be noted that Delaware does not require the individual members to state their residency);
4. Defendant Bakkt Marketplace, LLC is a Virginia limited liability company (*see* Ex. E for Domicile and Residency); and
5. Defendant Webull Pay, LLC is a Delaware limited liability company. There is complete diversity between the parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

2. This Court also has federal question jurisdiction under 28 U.S.C. § 1331.
   1. Plaintiff asserts claims under the Commodity Exchange Act ("CEA"), 7 U.S.C. §§ 1 et seq., which provides a private right of action for commodities fraud. The Seventh Circuit has recognized that virtual currencies fall within the CFTC's regulatory jurisdiction as "commodities" under the CEA, confirming federal courts in this Circuit may hear such claims. See *CFTC v. McDonnell*, 287 F. Supp. 3d 213, 228 (E.D.N.Y. 2018), citing *CFTC v. Bittrex, Inc.*, No. 20-cv-869 (7th Cir. 2021) (acknowledging broad CFTC enforcement authority over digital assets). Accordingly, SOL and ADA qualify as commodities, and the CEA provides an independent federal cause of action properly before this Court.[1]

[1] See 7 U.S.C. § 25(a) (providing that "[a]ny person (other than a registered entity or registered futures association) who violates this chapter … shall be liable for actual damages" to an injured party). The statutory carve-out simply excludes exchanges and self-regulatory bodies from private liability; it does not apply to custodians or service providers such as Bakkt and Webull. Accordingly, Defendants fall within the class of

2. **Venue and Consent.** Venue is proper in this District under 28 U.S.C. § 1391(b)(1). Under § 1391(c)(2), a corporation or unincorporated association is deemed to "reside" in any judicial district where it is subject to personal jurisdiction. Here, Defendants are subject to personal jurisdiction in Illinois because they expressly consented by contract to jurisdiction and venue in Chicago. The Bakkt User Agreement provides that "the parties submit to the exclusive jurisdiction and venue of the state or federal court located in Chicago, Illinois" for suits seeking injunctive relief or to confirm an award, and that the parties waive any objections to inconvenience or invalidity of such jurisdiction (Ex. 1, § 16.2 at 11). The same Agreement also requires that arbitration proceedings "will be held in Chicago, Illinois" (Ex. 1, § 16.2 at 10). These provisions together constitute Defendants' consent to Illinois as the chosen forum, which deems them residents of this District for venue purposes.[2] Apart from this, the agreement among the parties explicitly allows jurisdiction to be proper in this venue as Plaintiff seeks injunctive relief as well as monetary damages. *See* Count VI (Infra).

3. **Arbitration Failure and FAA § 4.** Plaintiff complied with the User Agreement by filing a Demand for Arbitration with JAMS (Ex. A) and serving all Defendants (Ex. B). Defendants refused to participate, and JAMS formally closed the matter on October 28, 2024, due to non-participation (Ex. C). Under 9 U.S.C. § 4, when a party "fails, neglects, or refuses" to arbitrate, the aggrieved party may seek judicial relief in a federal district court that would otherwise have jurisdiction "save for" the arbitration agreement. See

---

"persons" subject to private suit under the CEA, and Plaintiff has standing to pursue commodities fraud claims against them in this Court.

[2] See *Atlantic Marine Constr. Co. v. U.S. Dist. Ct.*, 571 U.S. 49, 63–65 (2013) (holding that a valid forum-selection clause should be "given controlling weight in all but the most exceptional cases" and that objections based on inconvenience or § 1404(a) factors are significantly narrowed when parties have consented by contract to a forum).

*Minor v. Prudential Sec.*, 94 F.3d 1103, 1106 (7th Cir. 1996); *America's Money Line, Inc. v. Coleman*, 360 F.3d 782, 784–86 (7th Cir. 2004). The Seventh Circuit further holds that only the district in which arbitration was contractually required may compel arbitration, confirming that this Court was the sole forum contemplated by the parties to enforce the arbitration clause. See *Merrill Lynch, Pierce, Fenner & Smith v. Lauer*, 49 F.3d 323, 327–28 (7th Cir. 1995); *Garage Door Sys., LLC v. Blue Giant Equip. Corp.*, 134 F.4th 953, 957 (7th Cir. 2024); see also *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 808 (7th Cir. 2011). Because Defendants repudiated arbitration and JAMS closed the file, arbitration is no longer available. In these circumstances, the same district court that would have had exclusive authority to compel arbitration — here, the Northern District of Illinois — is also the proper forum to adjudicate the dispute on the merits, consistent with both FAA § 4's geographic limitation and the parties' forum-selection clause. As Plaintiff has an independent basis for jurisdiction through diversity and federal question under the CEA, this Court is the correct forum for resolution of Plaintiff's claims.

## III. PARTIES

4. **Plaintiff Essam Saad** ("Plaintiff") is a natural person domiciled in the State of Florida. At all times relevant, Plaintiff maintained a Webull account governed by the Bakkt User Agreement (Ex. 1).

5. **Defendant Bakkt Holdings, Inc.** ("Bakkt Holdings") is a corporation organized under the laws of Delaware with its principal executive offices located at 10000 Avalon Boulevard, Suite 1000, Alpharetta, Georgia 30009. Bakkt Holdings is the parent company through which the other Bakkt entities operate their cryptocurrency business (Ex. 7).

6. **Defendant Bakkt Marketplace, LLC** ("Bakkt Marketplace") is a Virginia limited liability company with principal offices in Alpharetta, Georgia. All of the outstanding equity interests of Bakkt Crypto Solutions, LLC are held by Bakkt Marketplace, which, along with its subsidiaries, is controlled by Bakkt Holdings, Inc. (Ex. 11, Sept. 2023 Form 10-Q/A, at 25).

7. **Defendant Bakkt Crypto Solutions, LLC** ("Bakkt Crypto") is a limited liability company organized under the laws of Delaware. Formerly known as Apex Crypto, LLC, the entity was acquired by Bakkt in April 2023 and rebranded as Bakkt Crypto Solutions, LLC (Ex. 7; Ex. 8). Bakkt Crypto executes and custodies cryptocurrency transactions for Webull and its users.

8. **Defendant Webull Pay, LLC** ("Webull Pay") is a limited liability company organized under the laws of Delaware with its principal office in New York. Webull Pay operates the mobile application through which Plaintiff accessed cryptocurrency services provided by Bakkt Crypto and Bakkt Marketplace (Ex. 3, Webull Migration Email).

9. Collectively, Defendants acted in concert to offer, sell, custody, and liquidate Plaintiff's ADA and SOL holdings, as further set forth herein.

## IV. STATEMENT OF FACTS

### A. Background on Cryptocurrency and Trading Platforms

10. Cryptocurrency refers to digital assets issued and transferred using blockchain or distributed ledger technology. Ownership and control over a cryptocurrency is conferred through possession of the corresponding "private key," while transactions are recorded either "on-chain" (to the blockchain ledger) or "off-chain" (internalized on a platform's records).

11. Trading platforms like Defendants' allow retail investors to purchase, store, and sell cryptocurrencies, while simultaneously assuming custodial control over customer assets. In such arrangements, users' balances are reflected on the platform's internal ledgers, but the platform holds the actual cryptocurrency in omnibus wallets.

12. Defendants' business model required customers like Plaintiff to entrust them with custody of their assets, with Defendants publicly and contractually promising to safeguard them "for the benefit of" the account holder (Ex. 1, at § 8).

**B. The Bakkt Platform and Contractual Representations**

13. Through a collaboration between Bakkt and Webull Pay, retail investors were offered the ability to trade crypto assets, including Cardano (ADA) and Solana (SOL).

14. To open a Webull Pay account, customers were required to consent to multiple agreements, including the Bakkt User Agreement, which expressly stated:

- Customers could enter crypto transactions through Webull Pay,
- Bakkt would serve as custodian of all crypto held in hosted wallets, and
- "All User Assets held in your Wallet are custodial assets held by Bakkt for your benefit" (Id.).

15. The User Agreement further emphasized that each account was self-directed, such that the customer was "solely responsible for any and all Orders placed" through the account, and Bakkt would not act without express authorization (Id., at § 11.2).

**C. Plaintiff's Purchases of ADA and SOL**

16. On or about April 21, 2021, Plaintiff opened a Webull account for the purpose of investing in cryptocurrencies.

17. Between January 22, 2022 and February 24, 2022, Plaintiff purchased approximately 265,415.94 ADA for $235,471.93 and 121.13 SOL for $9,567.20 (Ex. 4, Purchase Records).

18. These purchases were executed through Webull, with custody provided by Apex Crypto, LLC, later acquired by Bakkt and renamed Bakkt Crypto Solutions, LLC (Ex. 7).

19. Plaintiff never instructed Defendants to sell or otherwise dispose of his ADA or SOL. At all times prior to September 2023, Plaintiff's holdings remained under custodial control of Defendants.

**D. Defendants' Acquisition of Apex Crypto and Delisting of ADA and SOL**

20. On April 1, 2023, Bakkt completed its acquisition of Apex Crypto, LLC, which was subsequently rebranded as Bakkt Crypto Solutions, LLC (Ex. 7; Ex. 8, at 25).

21. Following this acquisition, Defendants undertook a broad-scale "delisting" of dozens of cryptocurrencies, including ADA and SOL, citing alleged regulatory uncertainty.

22. On September 8, 2023, Defendants notified customers by email that ADA and SOL would no longer be supported and directed customers to sell or withdraw their holdings within eleven days (Ex. 5, Delisting Notices).

23. Despite this limited notice period, Plaintiff did not authorize any sale of his ADA or SOL.

**E. Unauthorized Liquidation of Plaintiff's Assets**

24. On September 21, 2023, Defendants unilaterally created and executed market sell orders liquidating 265,415.93 ADA and 121.13 SOL from Plaintiff's account (Ex. 6).

25. Defendants sold Plaintiff's ADA and SOL at below-market value to their own affiliate, Bakkt Crypto Solutions, LLC, and then resold the assets for profit.

26. Plaintiff did not create these orders, authorize these sales, or otherwise provide consent.

27. Defendants had no contractual or legal authority to liquidate Plaintiff's assets. Their custodial duty was to safeguard Plaintiff's ADA and SOL until directed otherwise by Plaintiff (Ex. 1, at §8).

**F. Defendants' Financial Motive and SEC Admissions**

28. Bakkt's SEC filings reveal the financial pressures underlying these actions. In its September 2023 Form 10-Q, Bakkt disclosed net losses of $147.1 million and consumption of $53.9 million in cash from operations, acknowledging "substantial doubt" about its ability to continue as a going concern (Ex. 10, at 14–15).

29. In its amended report, Bakkt further admitted it "did not believe" it had sufficient cash and restricted cash to fund operations for the next twelve months and faced "substantial doubt" as to its continued viability absent additional capital (Ex. 11, at 20).

30. These admissions confirm that Defendants' liquidations were not routine account adjustments, but part of a calculated scheme to reduce custodial obligations, inflate revenue, and bolster liquidity at customers' expense.

**G. Arbitration Proceedings and Closure**

31. Pursuant to the User Agreement, Plaintiff filed a Demand for Arbitration with JAMS, attaching supporting documentation and exhibits (Ex. A).

32. Plaintiff duly served all Defendants by U.S. Mail at their registered addresses (Ex. B).

33. Defendants failed to appear or participate in the arbitration.

34. On October 28, 2024, JAMS issued a formal Notice of File Closure, terminating the arbitration due to Respondents' non-participation (Ex. C).

35. Plaintiff now brings this action in the Northern District of Illinois to enforce his rights under federal diversity jurisdiction and the venue provisions of the Bakkt User Agreement (Ex. 1, at §§ 16.2, 27).

**H. The Value of ADA and SOL at Current Market Rates (9/19/2025)**

36. The value of 265,415.93 ADA is approximately $238,874.34 as of current trading values (9/19/2025).

37. The value of 121.13 SOL is approximately $28,815.62 as of current trading values (9/19/2025)

38. Together, these are valued at approximately $267,682.96 as of current trading values.

**V. CAUSES OF ACTION**

**COUNT I**
**Breach of Contract**
*(Against Defendants Bakkt Crypto Solutions, LLC; Bakkt Marketplace, LLC; and Webull Pay, LLC)*

39. Plaintiff realleges and incorporates by reference paragraphs 1–38 as though fully set forth herein.

40. Plaintiff entered into valid contracts with Defendants, including the Bakkt User Agreement (Ex. 1), which governed the custody and management of Plaintiff's ADA and SOL.

41. Under the User Agreement, Defendants agreed to safeguard Plaintiff's assets "for the benefit of" Plaintiff, to maintain custodial control, and to execute transactions solely at Plaintiff's direction (Ex. 1, §§ 8, 11.2).

42. Defendants breached these obligations by unilaterally liquidating Plaintiff's ADA and SOL on September 21, 2023, without authorization or direction from Plaintiff.

43. As a direct and proximate result (Ex. 6), Plaintiff suffered damages exceeding $75,000, including loss of assets and lost investment opportunities.

**COUNT II**
**Breach of the Implied Covenant of Good Faith and Fair Dealing**
*(Against Defendants Bakkt Crypto Solutions, LLC; Bakkt Marketplace, LLC; and Webull Pay, LLC)*

44. Plaintiff realleges and incorporates by reference paragraphs 1–38 as though fully set forth herein.
45. The Bakkt User Agreement (Ex. 1) imposed an implied covenant of good faith and fair dealing, requiring Defendants to exercise their contractual discretion honestly, fairly, and in a manner consistent with the reasonable expectations of Plaintiff as the account holder.
46. Defendants breached the implied covenant by unilaterally liquidating Plaintiff's ADA and SOL (Ex. 6, Forced Liquidation Receipts), despite contract language promising custodial holding of assets "for the benefit of" Plaintiff and affirming that the account was self-directed (Ex. 1, §§ 8, 11.2).
47. Defendants further acted in bad faith by profiting from the liquidation through recognition of revenue associated with delisted crypto assets on September 21, 2023 (Ex. 11, Sept. 2023 Form 10-Q/A, at 8), while depriving Plaintiff of the benefit of continued ownership of his assets.
48. Defendants' conduct frustrated the essential purpose of the User Agreement — to provide secure custodial services and allow Plaintiff to control his own investment decisions.

As a result of Defendants' breach of the implied covenant of good faith and fair dealing, Plaintiff has been damaged in excess of $75,000, and is entitled to compensatory and punitive damages.

**COUNT III**
**Breach of Fiduciary Duty**
*(Against Defendants Bakkt Crypto Solutions, LLC; Bakkt Marketplace, LLC; and Webull Pay, LLC)*

49. Plaintiff realleges and incorporates by reference paragraphs 1–38 as though fully set forth herein.

50. As custodians of Plaintiff's ADA and SOL, Defendants owed fiduciary duties of loyalty, care, and honesty to Plaintiff (Ex. 1, at §§ 8, 11.2).

51. By liquidating Plaintiff's ADA and SOL without authorization, Defendants acted in their own financial interest — including recognizing revenue from delisted assets (Ex. 11, at 8) — to the detriment of Plaintiff.

52. Defendants also failed to provide adequate notice or reasonable opportunity for Plaintiff to transfer his assets, further breaching their duties (Ex. 5).

53. As a result, Plaintiff has suffered damages in excess of $75,000, together with consequential and punitive damages.

**COUNT III**
**Conversion**
*(Against All Defendants)*

54. Plaintiff realleges and incorporates by reference paragraphs 1-38 as though fully set forth herein.

55. Plaintiff held a right to possession of his ADA and SOL, which were maintained in Defendants' custody for his benefit (Ex. 4, Purchase Records; Ex. 1, User Agreement § 8).

56. On or about September 21, 2023, Defendants intentionally exercised dominion and control over Plaintiff's ADA and SOL by liquidating them without authorization (Ex. 6, Forced Liquidation Receipts).

57. Defendants' wrongful conduct deprived Plaintiff of his property and constituted conversion.

58. Plaintiff has been damaged in an amount to be determined at trial exceeding $75,000.

**COUNT IV**
**Negligence**
*(Against All Defendants)*

59. Plaintiff realleges and incorporates by reference paragraphs 1–38 as though fully set forth herein.

60. Defendants owed Plaintiff a duty of reasonable care in the safekeeping, custody, and management of his ADA and SOL, which were entrusted to Defendants under the Bakkt User Agreement and related account agreements (Ex. 1, User Agreement §§ 8, 11.2).

61. Defendants breached their duty of care by failing to act as reasonably prudent custodians of Plaintiff's assets, including but not limited to:

a. Liquidating Plaintiff's ADA and SOL without authorization;

b. Failing to implement safeguards to prevent unauthorized sales; and

c. Acting with disregard to Plaintiff's rights while prioritizing their own financial interests (Ex. 11, Sept. 2023 Form 10-Q/A, at 8).

62. As a direct and proximate result of Defendants' negligence, Plaintiff lost 265,415.93 ADA (approximately $238,874.34 as of current trading value(9/19/2025)) and 121.13 SOL(approximately $28,815.62 as of current trading values (9/19/2025)), valued at approximately $267,682.96, well over the $75,000 § 1332 threshold.

63. Plaintiff also suffered consequential damages from the loss of his investment strategy (Ex. 4, Purchase Records; Ex. 6, Forced Liquidation Receipts).

64. Plaintiff is entitled to recover compensatory damages, costs, and any further relief the Court deems just and proper.

**COUNT V**
**Unjust Enrichment**
*(Against All Defendants)*

65. Plaintiff realleges and incorporates by reference paragraphs 1–38 as though fully set forth herein.

66. By wrongfully liquidating Plaintiff's ADA and SOL, Defendants conferred benefits upon themselves in the form of proceeds, transactional revenue, and relief from custodial obligations.

67. Defendants were unjustly enriched at Plaintiff's expense, retaining profits and liquidity that rightfully belonged to Plaintiff (Ex. 11).

68. Equity and good conscience require restitution of the benefits Defendants obtained through their wrongful acts.

**COUNT VI**
**Declaratory and Injunctive Relief**
*(Against All Defendants)*

69. Plaintiff realleges and incorporates by reference paragraphs 1–38 as though fully set forth herein.

70. A justiciable controversy exists regarding Defendants' unauthorized liquidation of Plaintiff's assets and their ongoing assertion of rights inconsistent with Plaintiff's ownership.

71. Plaintiff seeks a declaration that Defendants had no authority to liquidate his ADA and SOL, and that all assets custodied under the User Agreement are property of the account holder, not Defendants (Ex. 1, §§ 8, 11.2).

72. Plaintiff further seeks injunctive relief prohibiting Defendants from unilaterally liquidating, selling, or otherwise disposing of custodial assets absent explicit customer authorization.

**COUNT VII**
**Fraud**
*Applies To: All Defendants*

73. Claimant repeats and realleges each allegation contained in paragraphs 1-38 of the this Complaint as if fully set forth herein.

74. To succeed on a claim for fraud, a claimant must plead (1) a false representation made by the respondent; (2) the respondent's knowledge or belief that the representation was false, or was made with reckless indifference to the truth; (3) an intent to induce the claimant to act or refrain from acting; (4) The claimant's action or inaction in justifiable reliance upon the representation; and (5) damage to the claimant as a result of such reliance. *Gaffin v. Teledyne, Inc.*, 611 A.2d 467, 472 (Del. 1992).

75. Respondents falsely represented that Bakkt had legitimate reasons and/or authority to process a sale of Claimant's ADA and SOL without Claimant's authorization.

76. Respondents falsely represented that Claimant was only entitled to either "liquidate" any position in SOL and ADA before September 19, 2023 or allow the positions to be "fully liquidated" by Bakkt.

77. Respondents knew the representation was false or made the representation with reckless indifference to the truth as Respondents prepared and/or ratified the Bakkt User Agreement that expressly stated that Respondents had no legal right to Claimant's cryptocurrency assets, that Claimant had a material right to custody services for cryptocurrency held on the Platform, that Respondents had an obligation to safeguard Claimant's ADA and SOL, and that Respondents continued provision of custody services, in addition to being contractually obligated, was wholly in accordance with regulatory requirements.

78. Respondents intended to induce Claimant to sell his ADA and SOL and/or to allow his ADA and SOL to be sold in order to reduce Bakkt's minimum capital requirements, and/or to generate transactional based revenues for Bakkt, and/or to obtain valuable assets at preferred prices.

79. Additionally, Respondents intended that their false representations seemingly legitimize the illicit transaction to induce Claimant to refrain from enforcing his contractual rights under the User Agreement.

80. Claimant inaction was taken in justifiable reliance on Respondents false representations as Respondents owed fiduciary duties to Claimant.

81. Claimant's inaction resulted in Respondents being able to enact their plan to dispossess Claimant of valuable assets causing damage to Claimant.

**COUNT VIII**
**Aiding and Abetting Breach of Fiduciary Duty**
*(Against Defendants Bakkt Holdings, Inc. and Webull Pay, LLC)*

82. Plaintiff realleges and incorporates by reference paragraphs 1–38 as though fully set forth herein.

83. Defendant Bakkt Crypto Solutions, LLC owed Plaintiff fiduciary duties as custodian of his ADA and SOL, including the duties of loyalty, care, and good faith (Ex. 1, User Agreement §§ 8, 11.2).

84. Bakkt Crypto breached those fiduciary duties by liquidating Plaintiff's ADA and SOL without authorization (Ex. 6, Forced Liquidation Receipts), and by acting in its own financial interest, recognizing revenue from the liquidation (Ex. 11, Sept. 2023 10-Q/A, at 86).

85. Defendants Bakkt Holdings, Inc. and Webull Pay, LLC knowingly participated in, facilitated, and benefited from this breach of duty. Specifically:

a. Bakkt Holdings directed and controlled the conduct of its subsidiaries, including Bakkt Crypto and Bakkt Marketplace (Ex. 7, Bakkt Form 8-K; Ex. 11, 10-Q/A, at 25); and

b. Webull Pay provided the customer-facing platform through which the forced liquidations were executed (Ex. 3, Webull Migration Email).

86. By knowingly assisting Bakkt Crypto in breaching its fiduciary duties, Bakkt Holdings and Webull Pay are liable for aiding and abetting the wrongful conduct.

87. As a direct and proximate result, Plaintiff has suffered damages exceeding $75,000, plus consequential damages.

**COUNT IX**
**Violation of the Commodity Exchange Act, 7 U.S.C. §§ 1 et seq.**
*(Against All Defendants)*

88. Plaintiff realleges and incorporates by reference paragraphs 1–38 as though fully set forth herein.

89. Solana (SOL) and Cardano (ADA) are "commodities" within the meaning of the Commodity Exchange Act ("CEA"), 7 U.S.C. § 1a(9), because contracts for future delivery in virtual currencies, including SOL and ADA, are dealt in on U.S. exchanges. Courts have recognized that virtual currencies are commodities under the CEA. *See CFTC v. McDonnell*, 287 F. Supp. 3d 213, 228 (E.D.N.Y. 2018); *CFTC v. My Big Coin Pay, Inc.*, 334 F. Supp. 3d 492, 496 (D. Mass. 2018). The Seventh Circuit has likewise recognized the Commodity Futures Trading Commission's ("CFTC") broad regulatory authority over cryptocurrencies as commodities. See *CFTC v. McDonnell*, 287 F. Supp. 3d at 228 (citing Seventh Circuit authority). Accordingly, jurisdiction over this federal claim is proper in this District.

90. Under the CEA and its implementing regulations, it is unlawful to employ any manipulative or deceptive device, scheme, or artifice to defraud in connection with the sale or transaction of any commodity. 7 U.S.C. §§ 6(c)(1), 9(1); 17 C.F.R. § 180.1.

91. Defendants, acting through Bakkt Crypto Solutions, LLC and related affiliates, engaged in a scheme to wrongfully liquidate Plaintiff's holdings of SOL and ADA under the

pretext of forced "delisting," while in fact using the forced sales to bolster Defendants' liquidity and revenue (Ex. 5, Delisting Notices; Ex. 6, Forced liquidation Receipts).

92. These acts and omissions constituted the use of manipulative or deceptive devices, schemes, and artifices to defraud Plaintiff in connection with transactions involving commodities, in violation of the CEA and 17 C.F.R. § 180.1.

93. Defendants acted with scienter — that is, intentionally or recklessly — in orchestrating these unauthorized liquidations for their own benefit, to Plaintiff's detriment. This is corroborated by Defendants' SEC filings acknowledging severe liquidity pressures and reporting $27.6 million in transactional revenue from delisted crypto assets on September 21, 2023, the same date Plaintiff's assets were liquidated (Ex. 10, Bakkt Original Sept. 2023 10-Q; Ex. 11, Bakkt Amended Sept. 2023 10-Q/A). *See Evanston Bank v. Conticommodity Servs., Inc.*, 623 F. Supp. 1014, 1028 (N.D. Ill. 1985) (scienter required for commodities fraud).

94. As a direct and proximate result of Defendants' violations of the CEA, Plaintiff suffered damages including the value of the liquidated SOL and ADA (Ex. 4, Purchase Records), consequential damages from the loss of his investment strategy, and other economic losses.

95. Plaintiff is entitled to actual damages, attorneys' fees, and such other relief as this Court deems just and proper under 7 U.S.C. § 25(a).

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendants, and award the following relief:

A. **Compensatory damages** in an amount to be proven at trial but no less than $65,000, representing the value of Plaintiff's wrongfully liquidated ADA and SOL (Ex. 4; Ex. 6), together with consequential damages from lost investment opportunities;

B. **Punitive damages** to deter Defendants and others similarly situated from engaging in similar misconduct;

C. **Declaratory relief** establishing that assets custodied under the Bakkt User Agreement are custodial property held for the benefit of the account holder, not the Defendants (Ex. 1, at §§ 8, 11.2);

D. **Injunctive relief** prohibiting Defendants from unilaterally liquidating or otherwise disposing of custodial assets without explicit customer authorization (Ex. 5; Ex. 6);

E. **Pre-judgment and post-judgment interest** as permitted by law;

F. **Reasonable attorneys' fees and costs** of this action, to the extent available under law and equity; and

G. Such other and further relief as the Court deems just and proper.

## VII. JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

/s/Taher Kameli
Taher Kameli
Attorney for Plaintiff

Kameli Law, P.C.
P.O. Box 16680
Chicago, IL 60616
312-233-1000
ARDC: 6237407
taher@kameli.com
October 1, 2025